UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



UNITED STATES OF AMERICA,

    Plaintiff,

vs.                        CASE NO.: 02-60096-CR-DIMITROULEAS

SHUEYB MOSSA JOKHAN,

                             Magistrate Judge Snow

    Defendant.
_____/

## DEFENDANT'S OBJECTIONS TO THE
## PRESENTENCE INVESTIGATION REPORT

    COMES NOW the Defendant SHUEYB MOSSA JOKHAN, by and through his undersigned counsel and pursuant to Administrative Order 95-02 and U.S.S.G. §6A1.3 and hereby files these, his objections to the Presentence Investigation Report (hereinafter "PSI") and as grounds therefore would state as follows:

    1. That on July 25, 2002, the Defendant pled guilty pursuant to a plea agreement with the Government to Count I of an indictment which generally charged him generally with conspiracy to destroy property affecting interstate commerce.

    2. That currently, sentencing is set in this matter for **Friday, October 4, 2002** at 10:30 a.m. in Ft. Lauderdale.

    3. The defendant would object to the first sentence of ¶21 of the PSI wherein the probation officer states that the April 19, 2001 meeting was a "private meeting." The so called "private meeting" was actually a prayer service at a Miramar mosque.

    4. The defendant would object to ¶24 specifically the third sentence and the use of the word "mission." This meeting was more of an open discussion of ideas

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963



rather than the mission itself. The defendant would request that this paragraph be modified to include his version.

5. The defendant would request and object to ¶25 as it pertains to the phrase that is used that he had "a specific hatred of Jews." The defendant expressed his views at the April 25, 2001 meeting in part due to his frustration of the perceived and actual prejudice shown to his uncle over the denial of the purchase of the condominium.

In addition, in the same paragraph, the defendant would object to the two last full sentences on the bottom of page eight as incorrect. The situation on April 25, 2001 played out when the defendant, Mandhai and Mohammed went to view the electric substations the day before. It was this defendant who was concerned that one specific transformer was too close to a hospital and he was afraid that innocent people may be hurt. As a result, this defendant suggested a military type target, to wit, the armory.

Finally the next to last sentence of that paragraph therefore should read as follows: "As a result, they refocused the target of their mission *away from* electrical transformers.

6. The defendant would object to ¶58 and 65 and request that the paragraph be modified to change references to 1992 to 1994 because that is the correct year the defendant came to the United States from Trinidad.

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

## *Applicability of U.S.S.G. §3A1.4*

The defendant would object to the ¶43 of the PSI wherein the probation officer seeks to increase the defendant's guideline range under §3A1.4 of the guidelines in that the "offense is a felony that was intended to promote a federal crime of terrorism."

The case law regarding the applicability of this section of the guidelines is rare and cases involving no actual harm are rarer. In order to qualify for such and enhancement under the guidelines, it must be established that the offense was a felony (which the defendant would stipulate to) that involved or was intended to promote a federal crime of terrorism. If so, the defendant would receive, as suggested by the probation officer, a twelve (12) level increase in his offense level *and* the defendant's criminal history category is increased to the career offender level of category VI.

The guidelines then direct the court to determine whether or not the crime of conviction can be defined as a "federal crime of terrorism." This phrase is defined at 18 U.S.C. §2332b(g)(5). That statute requires that two separate prongs be proven. The initial prong is that it must be established that the offense was calculated to influence or affect the government by intimidation or coercion, or to retaliate against government conduct. The second prong that presumably the probation officer is relaying on is that the conduct must be a violation of a specifically enumerated statute set forth in 18 U.S.C. §2332b(g)(5)(B)(i). The statute is silent regarding the applicability to either conspiracies or attempts.

The application of the second prong specifically enumerates that certain

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

violations of 18 U.S.C. §844 *but not all violations of 18 U.S.C. §844* will satisfy the definition of a "federal crime of terrorism." The statute, in its current form, provides that a violation of §844(f)(2) and (f)(3) relating to the arson and bombing of government property risking or causing death will qualify within the definition of an enumerated crime. The second and final area of 18 U.S.C. §844 that would be a specifically enumerated crime within the definition of a "federal crime of terrorism" is a violation of 18 U.S.C. §844(i) relating to the arson and bombing of property used in interstate commerce.

The indictment in the instant case charged the defendant in Count I with none of the specifically enumerated violations as stated above. The crime of conviction in this case is a violation of 18 U.S.C. §844(n) which punishes a conspiracy to violate any statute within that section of the law. A violation of 18 U.S.C. §844(i) specifically includes both actual and attempted damage or destruction by fire or explosive to any property affecting interstate or foreign commerce. The statute specifically excludes conspiracy from its language thereby relying on the catchall conspiracy.

It can be presumed by the failure of Congress to enumerate this specific statutory violation as well as all conspiracies from the definition of a "federal crime of terrorism" that they did not intend to have the harsh increases (which are tantamount to an exponential upward departure) apply to situations involving a reverse sting such as happened within this case as opposed to actual or attempted harm.

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

In its charging decisions, this defendant was never charged with either the actual or attempted destruction of this type of property by the grand jury. The defendant's role was outlined in ¶37 of the PSI as well within the conspiratorial realm but certainly not constituting either actual or attempted destruction as described in §844(i). As a result, since the defendant has neither be convicted or charged with the actual or attempted destruction of property as enumerated in 18 U.S.C. §844(i) and his crime at conviction is not an enumerated crime as outlined in 18 U.S.C. §2332b(g)(5)(B)(i), the increases under §3A1.4 of the guidelines are inappropriate.

### *Downward Departure for No Actual Harm*

The defendant would move for a downward departure under §5K2.0 in that there this is certainly a case that is well outside the heartland of cases as envisioned by the drafters of the federal sentencing guidelines.

As previously stated, the case law regarding the applicability of this section of the guidelines is rare and cases involving no actual harm are rarer. In United States vs. Leahy, 169 F.3d 433 (7th Cir. 1999) the court dealt with the use of §3A1.4 in the realm of an upward departure for the possession and not the actual use of chemical and biological toxins for use as a weapon in violation of 18 U.S.C. §175(a). After a shooting and information received about the defendant, authorities recovered from Leahy's home a quantity of ricin which the court described as the second most deadly substance known to man for which there is no known antidote. When ricin is inhaled or ingested, in even a tiny amount, ricin dust is typically fatal. A quantity of a second toxin, nicotine sulfate which is marketed by chemical suppliers as having

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

a use in a variety of insect poisons was also found.

Law enforcement also found a quantity of DMSO which is a legal substance that could have been used as a delivery system which allows material to penetrate the skin on contact and enter the bloodstream. As the court described "(a)pplying DMSO contaminated with a toxin such as ricin or nicotine sulfate to a person's skin would have an effect similar to that of injecting the toxin directly with a syringe. See United States vs. Leahy, 169 F.3d at 436.

While the district judge found that the parties had agreed that the most analogous applicable guideline for Leahy's conduct was §2K2.1. However the district judge, as is his right to do, found that while this may have been the most analogous guideline, a number of reasons justified an upward departure including the number of toxins possessed, the high toxicity of ricin, nicotine sulfate and the DMSO, and "the potential for mass homicides the toxins afforded."

However, as the district judge noted in Leahy, since the defendant did not engage in "an actual or attempted act of terrorism" the court elected to upward depart ten rather than twelve levels and, for the same reason, elected not to increase Leahy's criminal history category. This departure tripled Leahy's guidelines from 41-51 months to 121-151 months.

Whether there was any harm or not, the effect of an enhancement for this defendant increases his guideline range by an unheard of eleven fold. This specific guideline range, assuming that this Court finds that this guideline increase under §3A1.4 is applicable, the defendant's guideline range as now calculated is as a total

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

offense level of 27 with a criminal history category of VI yielding a sentencing range of 130-162 months.

The question therefore is what would the defendant's sentencing range have been assuming that the terrorism guideline is not applicable. Though there is a statutory minimum sentence of five (5) years, without the "victim related adjustment under §3A1.4, the defendant's guideline range would be as follows:

| | | |
|---|---|---|
| Base Offense Level: | 20 | (¶41 of the PSI) |
| §2X1.1(b)(2) reduction | -3 | (¶42 of the PSI) |
| Minor Role | -2 | (¶44 of the PSI) |
| Acceptance of Responsibility | -2[1] | (¶48 of the PSI) |
| Total Offense Level | 13 | |
| Criminal History Category | I [2] | (¶52 of the PSI) |
| ***Sentencing Range*** | ***12-18 months*** | |

This eleven-fold increase would take place under §3A1.4 whether the defendant was successful in his plans or not. This eleven-fold increase would take place under §3A1.4 whether conduct of the defendant was the result of an ongoing intelligence operation or the result of a classic reverse sting where the defendants

---

[1] The probation department, defendant and the government agree that the defendant should receive a three level reduction for acceptance of responsibility. However, in the example provided above since the defendant's offense level is less than 16 prior to the operation of §3E1.1 of the guidelines, he would not be eligible for the third point for acceptance.

[2] While §3A1.4 mandates a criminal history category of VI, the defendant has no prior criminal record of any kind. See ¶50-55 of the PSI.

Page 7 of 12

were not even capable of simply buying one firearm due to lack credit. (See ¶32 and 35 of the PSI) This eleven-fold increase would take place under §3A1.4 whether the defendant completed the actual acts alleged or as occurred in this case, the defendant's withdrew from the conspiracy well before any actual harm occurred.

In <u>United States vs. Leahy</u>, 169 F.3d 433 (7th Cir. 1999) the district court (which was upheld by the circuit court) found that though the defendant possessed a biological weapon of mass destruction with a complex delivery system, the penalties called for under §3A1.4 were ***too harsh***. If this court gave the defendant the ten level upward departure, a sentencing range in this case would jump only to 46-57 months (Offense level 23, Criminal History Category of I)

Assuming this Court finds that §3A1.4 is applicable, actual harm caused is not a factor in its applicability. The cases citing to §3A1.4 are scarce at best. Two of the most infamous cases in American jurisprudence points to the desire of the court to use this guideline adjustment but for the fact that the offenses occurred prior to the 1997 amendment to the guidelines that added this section. See <u>United States vs. Nichols</u>, 169 F.3d 1255 (10th Cir. 1999); <u>United States vs. Fortier</u>, 180 F.3d 1217 (10th Cir. 1999)(relating to the Oklahoma City bombing of the Murrah federal building) and <u>United States vs. Khalil</u>, 214 F.3d 111 (2nd Cir. 2000); <u>United States vs. Rahman</u>, 189 F.3d 88 (2nd Cir. 1999)(relating to the 1993 World Trade Center bombing).

Therefore, the conduct in this case should take this matter outside the "heartland" of cases and the defendant should receive a downward departure. The lack of actual harm in the instant case was not caused by the arrests of the defendants

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

or the intervention of law enforcement but by the defendant himself who affirmatively withdrew from the plot.

### *Adequacy of the Criminal History Category*

The Defendant would object to the finding of him as a Criminal History Category VI as outlined in ¶52 of the PSI and would move for a downward departure under §5K2.0 and §4A1.3 of the guidelines in that the lack of his prior convictions that allows him to be classified as such and the harsher penalty imposed overstates the severity of his prior criminal record.

Under §4A1.3 the Court may downwardly depart "where (it) concludes that a Defendant's criminal history significantly over represents the seriousness of a Defendant's criminal history or the likelihood that the Defendant will commit further crimes."

In this Circuit, the court has held that even a career criminal may be granted relief in the form of a downward departure under §4A1.3 regardless of status. United States vs. Webb, 139 F.3d 1390, 1395 (11th Cir. 1998); United States vs. Shoupe, 35 F.3d 835, 839 (3rd Cir. 1994)

The only basis for the applying the career criminal history category as outlined in ¶52 of the PSI is §3A1.4(b) of the guidelines which mandates it. Once again, assuming that the court finds that this Defendant's conduct qualifies for the terrorism enhancement under §3A1.4, the defendant would object to the increase in his criminal history category. It goes without saying that this defendant, but for §3A1.4(b) of the guidelines would have *zero criminal history category points*. A review of the

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

guidelines shows that this is the only known section of the guidelines where a defendant literally becomes a career offender despite never having been arrested or convicted ever before.

In the introductory commentary to the Chapter Four of the guidelines, the Sentencing Commission explains with great clarity the four reasons why a defendant's criminal past or lack thereof is factored into the guidelines. They write that a "defendant's record of past criminal conduct is directly relevant to those purposes." Included as the first reason is that a "defendant with a record of prior criminal behavior is more culpable than a first offender and this deserving of a greater punishment." The second reason is that "general deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." The third reason listed for using prior criminal conduct is "to protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered." Finally, "repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation."

Based on the total lack of prior contact with the criminal justice system, the defendant's conduct in this case cannot justify such an increase in the criminal history category and as such it should be reduced since it significantly over represents the seriousness of the Defendant's criminal history or the likelihood that the Defendant will commit further crimes.

WHEREFORE, the defendant SHUEYB MOSSA JOKHAN respectfully

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

requests that this Court enter an order sustaining his objections to the presentence investigation report and granting his motion(s) for downward departure as requested.

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 27th day of September 2002 to: JEFFREY SLOMAN, ESQUIRE, Assistant United States Attorney, 500 E. Broward Boulevard, Suite #700, Ft. Lauderdale, Florida 33301 and to LEONARD FENN, ESQUIRE, 2121 Ponce de Leon Boulevard, Suite #430, Coral Gables, Florida 33134 and to MR. MICHAEL SANTUCCI, United States Probation Officer, 299 East Broward Boulevard, Suite #409, Ft. Lauderdale, Florida 33301.

LAW OFFICES OF PHILIP R. HOROWITZ
TWO DATRAN CENTER • SUITE 1910 • 9130 SOUTH DADELAND BOULEVARD • MIAMI, FLORIDA 33156 • (305) 232-1949 • FAX: (305) 232-1963

Respectfully submitted,

LAW OFFICES OF PHILIP R. HOROWITZ
Co-Counsel for Defendant JOKHAN
Suite #1910 - Two Datran Center
9130 South Dadeland Boulevard
Miami, Florida 33156
Tel.: (305) 232-1949
Fax.: (305) 232-1963

By: PHILIP R. HOROWITZ, ESQUIRE
Florida Bar No.: 466557


RON SCHMIDT, ESQUIRE
Co-counsel for Defendant
235 North University Drive
Pembroke Pines, Florida 33024
Tel.: (954) 961-9892
Fax.: (954) 961-1873

By: RON SCHMIDT, ESQUIRE
Florida Bar No.: 436747